IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMARA GREEN, et al. | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Case No. 15-MC-144-JP |
| | : |
| WILLIAM H. COSBY, JR. | : |
| | : |
| Defendant. | : |

### PLAINTIFFS' OPPOSITION TO WILLIAM H. COSBY, JR.'S MOTION TO QUASH A SUBPOENA

COME NOW the Plaintiffs, by and through their counsel, and hereby oppose Defendant William H. Cosby, Jr.'s Motion to Quash a Subpoena ("Motion to Quash") served upon Dolores Troiani, Esquire.

Ms. Troiani's case file for *Constand v. Cosby*, Case No. 05-1099, U.S. District Court for the Eastern District of Pennsylvania ("the *Constand* action") is likely the most current, most comprehensive, and most readily accessible trove of evidence relevant to this case (other than, perhaps, Defendant Cosby's own case file arising out of the *Constand* action). Ms. Troiani's case file is relevant to this case because, in the *Constand* action, the parties investigated accusations of sexual misconduct by three of the Plaintiffs in this case, as well as similar accusations by Ms. Constand and numerous other women. The case file is also relevant because of the admissibility of sexual assault propensity evidence under Federal Rule of Evidence 415 ("Rule 415"), and because the case file is relevant to Defendant Cosby's counterclaims, which imply that his accusers have conspired against him.

Defendant Cosby has given only one reason to bar Plaintiffs' access to Ms. Troiani's case file, notwithstanding its relevance to this case: the Confidential Settlement and General Release ("CSA") that Defendant Cosby entered into with, *inter alia*, Ms. Troiani and her client, Andrea

Constand.  However, Defendant Cosby has not substantiated that the CSA, even by its own terms, bars Ms. Troiani from disclosing her case file.  Even if he did, as the weight of federal case law holds, Plaintiffs' discovery cannot be limited by an agreement that Plaintiffs were not a party to.  Accordingly, the Court should deny Defendant Cosby's Motion to Quash.[1]

Plaintiffs explain further, as follows:

### I.     Background

#### A. The *Constand* action and the CSA

On March 8, 2005, Ms. Constand filed the *Constand* action against Defendant Cosby, in this Court.   Ms. Constand was represented by Dolores Troiani, Esquire.  Ms. Constand alleged that Defendant Cosby drugged and then sexually assaulted her in 2004, and later defamed her as an extortionist after she reported the incident to the police.  *See Constand* action, Dkt. No. 1.  In 2006, Ms. Constand filed a related suit against Defendant Cosby's attorney Martin Singer, and The National Enquirer; that suit was ultimately consolidated with the *Constand* action.

In the course of the *Constand* action, the parties conducted discovery regarding not just the alleged assault against Ms. Constand, but also **other** women's allegations that Defendant Cosby had sexually assaulted them each.   Evidence regarding these other women's allegations were considered admissible under Rule 415 (which generally allows evidence of propensity in regard to sexual misconduct).  *See Constand* action, Dkt. No. 30, 229 FRD 472, 478 & n.16 (E.D. Pa. 2005) and Dkt. No. 76, 232 FRD 494, 497-98 (E.D. Pa. 2006).   Among other discovery, Defendant Cosby gave written responses to Ms. Constand's discovery requests, and he gave deposition testimony. *See Constand* action, Dkt. No. 72, 232 FRD 486, 487 (E.D. Pa. 2006).

---

[1] However, Plaintiffs consent to modifying the subpoena so that Ms. Troiani need not produce the CSA itself – unless the Court is inclined to rule in Defendant Cosby's favor to any extent, on the basis of the CSA.  In that event, the CSA should be produced so that Plaintiffs and the Court can fully review it.  *See infra* at Section IV.C.

2

Defendant Cosby correctly notes in his Brief in support of his Motion to Quash ("Brief") that, on November 4, 2005, this Court ordered that discovery-related papers filed in the *Constand* action would be sealed for the time being. *See Constand* action, Dkt. No. 47 at 2.[2] However, that protective order only applied to documents actually filed in the action, and (presumably) not the vast majority of documents within Ms. Troiani's case file.

More importantly (and contrary to Defendant Cosby's representations in the Brief at 2 and 11), the confidentiality order as entered was an interim one, and temporary in nature; it lapsed years ago and is no longer in effect. Hence, on January 13, 2006, this Court entered an order that denied a request to lift the seal, expressly based in part upon the fact that the seal would (if not renewed) automatically lapse anyway, following the disposition of certain anticipated discovery motions. *See Constand* action, Dkt. No. 72, 232 F.R.D. 486, 489-90 (E.D. Pa. 2006). (Earlier this year, the Court reiterated that the confidentiality order was of temporary duration, and that it expired when the *Constand* action terminated in 2006. *See infra* at Section I.C.)

According to Defendant Cosby's representations, on October 2, 2006, the parties to the *Constand* action, as well as Ms. Troiani, executed the CSA. At this time, Plaintiffs and this Court do not know the content of the CSA, except what Defendant Cosby has chosen to disclose. In his Brief, Defendant Cosby makes several assertions about the legal effect of the CSA, but only discloses the actual text of some or all of Paragraphs 14, 16, and 19. (According to the text that Defendant Cosby has disclosed, the CSA contains at least 21 paragraphs.)

Also according to the text of the CSA that Defendant Cosby has selectively disclosed, Ms. Troiani and the other signatories agreed not to disclose documents generated by the *Constand*

---

[2] Defendant Cosby also makes reference to this Court's entry of a Stipulation of Confidentiality on July 13, 2006, Dkt. No. 94. This merely represented the Court's entry of an agreement among the parties to the *Constand* litigation that the previous confidentiality order would apply equally to the new defendants (Singer and The National Enquirer) as it did to the pre-existing parties.

action, "[e]xcept as provided in Paragraphs 15 and 21." CSA, ¶ 14 (emphasis added). This limitation is repeated later in Paragraph 14, again in sub-Paragraph 14(c), and once more in Paragraph 16. However, Defendant Cosby has not disclosed the contents of Paragraphs 15 and 21 to Plaintiffs or this Court.

Additionally, sub-Paragraph 14(c) expressly states that Ms. Troiani or any of the other signatories may disclose the CSA itself "in response to a valid subpoena issued by a court of competent jurisdiction," following the denial of any motion to quash such subpoena.

The *Constand* action was dismissed by a Stipulation and Order filed in the *Constand* action on November 8, 2006, Dkt. No. 96. However, the CSA's confidentiality terms were never incorporated into any judicial order.

### B.  The *Green* action and the first subpoena served upon Ms. Troiani

On December 10, 2014, Plaintiff Tamara Green filed suit against Defendant Cosby in the U.S. District Court for the District of Massachusetts, Case No. 3:14-cv-20211 ("the *Green* action"), Judge Mark G. Mastroianni presiding. Like Ms. Constand, Ms. Green alleges that Defendant Cosby drugged and then sexually assaulted Ms. Green; then defamed Ms. Green as a liar for truthfully disclosing his misconduct. *See* Dkt. No. 1. By amended complaint, Plaintiffs Therese Serignese and Linda Traitz joined the *Green* action, making similar accusations against Defendant Cosby. Subsequently, Defendant Cosby filed Motions to Dismiss each of the Plaintiffs' claims.

On April 7, 2015, while the Motions to Dismiss were still pending, Plaintiffs filed a Motion for Leave to serve a subpoena upon Ms. Troiani before the parties' FRCP 26(f) discovery conference ("Motion for Leave"). *Green* action, Dkt. No. 39. Plaintiffs sought leave to serve Ms. Troiani with a subpoena requesting "[a]ny and all documents which concern or relate to any one or more of" Plaintiffs Green, Serignese, and Traitz. At that time, Plaintiffs' intent was not to serve a

4

broad subpoena to conduct full-fledged discovery. As Plaintiffs explained in their Motion for Leave, they were only seeking documents that they contended would be material to the disposition of the *Green* action Motions to Dismiss. However, the Court denied Plaintiffs' Motion for Leave as premature. *Green* action, Dkt. No. 69.

On June 2, 2015, Defendant Cosby filed a motion to quash the first subpoena served upon Ms. Troiani, thus initiating the instant miscellaneous action. Dkt. No. 1. Subsequently, Judge Mastroanni in the *Green* action stayed discovery pending the disposition of the Motions to Dismiss. *Green* action, Dkt. No. 80. Accordingly, on September 9, 2015, this Court granted the motion to quash, albeit without expressing any view upon whether Plaintiffs could serve a subpoena upon Ms. Troiani should discovery be resumed. Dkt. No. 22.

## C. The July 2015 unsealing of all *Constand* action filings, and the disclosure of Defendant Cosby's deposition transcript

During the pendency of Defendant Cosby's motion to quash the first subpoena served upon Ms. Troiani, this Court made a significant ruling in the original *Constand* action. On July 6, 2015, in response to a motion by Intervenor The Associated Press, this Court issued a ruling addressing whether any of the discovery-related papers filed with the Court in the *Constand* action should be sealed. Preliminarily, this Court expressly declared that the November 2, 2005 confidentiality order was no longer in effect, as it had expired long ago, *Constand* action, Dkt. No. 105, 2015 U.S. Dist. LEXIS 87332, *15-16 n.8 (E.D. Penn. July 6, 2015).[3] This Court then declined to impose a new confidentiality order upon any filings in the *Constand* action, in light of the public interest in fully knowing the true character of Defendant Cosby, who had publicly represented himself as a moral

---

[3] As Defendant Cosby notes, he has taken an appeal from this Court's July 6, 2015 Order in the *Constand* action. Case No. 15-2797, U.S. Ct. of App. for the 3d. Cir. However, in his appeal, Defendant Cosby is not challenging this Court's finding that the November 4, 2005 confidentiality order expired long ago. Defendant Cosby only contends that this Court should have re-imposed the confidentiality order. *See* Appellant's Brief, Document 003112144187. Thus, Defendant Cosby has conceded this particular finding by the Court.

5

authority figure. *Id.* at *19, 29-30.[4]  Accordingly, the Clerk of the Court immediately made publicly available all *Constand* action filings which had heretofore been kept under seal.

Less than two weeks later, The New York Times reported that it had acquired a full copy of the transcript of Defendant Cosby's deposition in the *Constand* action, notwithstanding the CSA. The New York Times quoted extensively from the deposition, including Defendant Cosby's admissions that he had given Quaaludes to several extramarital sexual partners before having sex with them.  In particular, Defendant Cosby admitted to giving Quaaludes to Plaintiff Serignese (although he himself took none) before having sex with her.  *See* "Bill Cosby, in Deposition, Said Drugs and Fame Helped Him Seduce Women," The New York Times, July 18, 2015, *available at* http://www.nytimes.com/2015/07/19/arts/bill-cosby-deposition-reveals-calculated-pursuit-of-young-women-using-fame-drugs-and-deceit.html?_r=0.

### D. The resumption of discovery in the *Green* action and service of the current subpoena upon Ms. Troiani

On October 9, 2015, Judge Mastroianni denied Defendant Cosby's Motions to Dismiss. *Green* action, Dkt. No. 89.  Plaintiffs then filed a Third Amended Complaint, which added four new Plaintiffs making claims against Defendant Cosby similar to those of the original three.  On November 30, 2015, an initial scheduling conference was held in the *Green* action, and full-fledged discovery commenced.  At the conference, the discovery judge rejected the proposed confidentiality order that Defendant Cosby has attached to his Motion to Quash as part of Exhibit 4.  *See Exhibit A*, Transcript of Scheduling Conference on November 30, 2015 at 5-8.

---

[4] Defendant Cosby is incorrect to assert in the Brief at 2 that this Court's July 6, 2015 Order is in entitled to any less deference merely because he has taken an appeal of right from that order.  *See Howard v. Horn*, Case No. 99-4880, 2014 U.S. Dist. LEXIS 156433, *96 n.43 (E.D. Penn. Apr. 16, 2014) ("This Court's analysis was done pursuant to prevailing Third Circuit precedent which, at this time, is unaffected by the recent grant of certiorari.") (magistrate's report and recommendation), *approved and adopted by* 56 F. Supp. 3d 709 (E.D. Penn. 2014); *see also United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008) ("Absent an intervening Supreme Court case overruling prior precedent, we remain bound to follow our precedent even when the Supreme Court grants certiorari on an issue.").

On December 2, 2015, Plaintiffs served the subpoena at issue upon Ms. Troiani. Plaintiffs seek the production of all materials in Ms. Troiani's possession that are relevant to the *Green* action, and thus the subpoena requests Ms. Troiani's "entire case file" for the *Constand* action ("excluding attorney-client communications and attorney work-product"). Ms. Troiani has made no objection to the subpoena.

## II.  Standard of Decision

FRCP 26 establishes a liberal discovery policy, under which discovery is generally permitted of any items that are relevant or may lead to the discovery of relevant information. *Wertz v. GEA Heat Exchanges, Inc.*, Case No. 1:14-CV-1991, 2015 U.S. Dist. LEXIS 167947, *3 (M.D. Penn. Dec. 16, 2015). At the same time, the discovery in a given case should be "proportional to the needs of the case." *Id.* at 2-3; *see also* FRCP 1 (Federal Rules of Civil Procedure should be applied "to secure the just, speedy, and inexpensive determination of every action and proceeding").

"A party seeking discovery bears the initial burden of demonstrating that the requested discovery is relevant to its claim or defense, *i.e.*, encompasses materials that are admissible evidence and/or that appear reasonably calculated to lead to the discovery of admissible evidence." *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382-83 & n.12 (E.D. Pa. 2013).

> Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In considering a motion to quash or modify a subpoena, a court may also grant such a motion if it finds that the movant has met the "heavy burden of establishing that compliance with the subpoena would be 'unreasonable and oppressive.'" This burden is "particularly heavy to support a motion to quash as contrasted to some more limited protection" such as a protective order. In applying Rules 26 and 45, [the Court] must balance several competing factors: "(1) relevance, (2) need, (3) confidentiality, and (4) harm."

*Id.* at 383 (citations omitted).

Defendant Cosby contends that Plaintiffs' must make a heightened showing of relevance to obtain the CSA itself from Ms. Troiani. *See* Brief at 14-15. However, Plaintiffs do not seek to enforce the subpoena as to the CSA itself – so long as the Court does not otherwise intend to grant the Motion to Quash to any extent, on the basis of the CSA. *See infra* at Section IV.C.

As to protective orders imposing confidentiality, in particular:

> [A] party wishing to obtain an order of protection over discovery material must demonstrate that "good cause" exists for the order of protection. Fed. R. Civ. P. 26(c); *Smith v. Bic Corp.*, 869 F.2d 194, 199 (3d Cir. 1989). . . . Protective orders and orders of confidentiality are functionally similar, and require similar balancing between public and private concerns. . . . [W]hether an order of confidentiality is granted at the discovery stage or any other stage of litigation, including settlement, good cause must be demonstrated to justify the order. *Cf. City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir. 1991) ("We do not . . . give parties *carte blanche* either to seal documents related to a settlement agreement or to withhold documents they deem so 'related.' Rather, the trial court--not the parties themselves--should scrutinize every such agreement involving the sealing of court papers and [determine] what, if any, of them are to be sealed, and it is only after very careful, particularized review by the court that a Confidentiality Order may be executed.").
>
> "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a good cause showing. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986),*cert. denied*, 484 U.S. 976, 108 S. Ct. 487, 98 L. Ed. 2d 485 (1987). The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order. 785 F.2d at 1122.

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994).

### III. The materials generated by the Constand action constitute the most current, comprehensive, and readily accessible trove of evidence relevant to this action.

In the course of the *Constand* action, the parties conducted discovery into whether Defendant Cosby committed a sexual assault against Ms. Constand, and whether he

committed sexual assaults against numerous other women. (Hereinafter, these other alleged victims are referred to as "Rule 415 witnesses.") Ms. Troiani's case file is relevant to the instant action for several reasons, including but not limited to the following:

Several of the Rule 415 witnesses in the *Constand* action are Plaintiffs in the current action – including but not limited to Tamara Green, Therese Serignese, and Barbara Bowman. The materials in Ms. Troiani's case file are directly relevant to these Plaintiffs' claims and/or are likely to lead to the discovery of admissible evidence bearing upon those Plaintiffs' claims. (*E.g.*, it is already known that Defendant Cosby admitted at his deposition in the *Constand* action to the fact that he gave Quaaludes to the then 19 year-old Plaintiff Serignese, before having sex with her.) Access to Ms. Troiani's case file will promote the discovery of the truth and will eliminate the need to duplicate discovery that the parties to the *Constand* action already conducted.

Furthermore, the materials in Ms. Troiani's case file that concern Defendant's alleged sexual assaults against Ms. Constand and the Rule 415 witnesses in her lawsuit, are all also relevant to this action, under Rule 415 itself. This is because every Plaintiff's claim is based upon the fact that Defendant Cosby attempted to and/or actually assaulted her. *See Constand* action, Dkt. No. 76, 232 FRD 494, 497-98 (E.D. Pa. 2006); *see also Cleveland v. KFC Nat'l Mgmt. Co.*, 948 F. Supp. 62 (N.D. Ga. 1996) (reviewing legislative history of Rule 415). Thus, Plaintiffs intend to introduce evidence of Defendant Cosby's history of sexual assaults, to show his propensity to commit the sexual assaults that the Plaintiffs each accused him of committing.

Evidence on this subject **was already gathered in the *Constand* litigation.** Contrary to Defendant's self-serving suggestion at Page 12 of his Brief, to prove their case,

Plaintiffs should not have to rely solely upon their own testimony and the discovery responses of Defendant Cosby (who is already denying in this litigation that he committed the alleged sexual assaults, *see Green action*, Answer and Counterclaims, Dkt. No. 121).

Ms. Troiani's case file is relevant for an additional reason: Defendant Cosby has recently filed counterclaims against the Plaintiffs, charging them all with fabricating their accusations of sexual assault. *See Green* action, Dkt. No. 121. It is likely that Defendant Cosby will contend that the Plaintiffs acted in concert. Hence, Defendant Cosby has served requests for documents concerning all communications between each Plaintiff and any other Plaintiff, or **any other person who has accused Defendant Cosby of sexual assault**. *See, e.g., Exhibit B*, Defendant's First Request for the Discovery and Production of Documents and Tangible Things to Plaintiff Green, Nos. 2 and 11, Defendant's Request for the Discovery. This would include approximately 55 total accusers (including Plaintiffs), if not more.

Any evidence bearing upon the (non-)existence of a conspiracy among Defendant Cosby's accusers, is relevant to the *Green* action. Documents regarding the claims of Ms. Constand and the Rule 415 witnesses in her lawsuit are therefore relevant.

Defendant Cosby complains that Plaintiffs' request for Ms. Troiani's case file is too broad. Yet, Defendant Cosby's Brief never addresses Rule 415, nor the relevance of Ms. Troiani's case file to Defendant Cosby's counterclaims. The discovery requests and responses, deposition transcripts, pleadings, and correspondence, *inter alia*, within Ms. Troiani's case file, are all likely to contain evidence relevant to this action. There is no plausible way to significantly limit the scope of the subpoena without likely depriving Plaintiffs of important evidence (other than to exclude the CSA, *but see infra* at Section

IV.C).  It is also notable that Ms. Troiani has not complained that the subpoena is overly broad.

The parties to the *Constand* action already conducted discovery into the sexual assault claims of Ms. Constand and the Rule 415 witnesses, including at least three of the Plaintiffs.  It is only natural for Plaintiffs to access Ms. Troiani's case file, and use it to continue the investigation into Defendant Cosby's history of alleged sexual assaults, as well as evidence of the (non-)existence of a wide-ranging conspiracy against Defendant Cosby.  Conversely, denying Plaintiffs access to Ms. Troiani's case file, a trove of relevant documents would be prejudicial and wasteful, contrary to the dictates of FRCP 1 and 26.

### IV. Defendant Cosby has not met his high burden to demonstrate that the Court should forbid Plaintiffs access to Ms. Troiani's case file.

Given that Plaintiffs have demonstrated the relevance of Ms. Troiani's case file, it is Defendant Cosby's heavy burden to show why the Court should nevertheless quash Plaintiffs' subpoena.  The thrust of Defendant Cosby's argument is that Plaintiffs' discovery should be controlled by a private agreement (the CSA) that Defendant reached years ago with Mss. Constand and Troiani.

This argument is flawed for at least two reasons.  First, Defendant Cosby has not substantiated that the CSA even purportedly bars Ms. Troiani from complying with the subpoena.  Second, in any event, even if the CSA did have such a purported effect, Plaintiffs' discovery cannot be limited by an agreement that Defendant Cosby reached with unrelated third parties.

#### A. Defendant Cosby has not satisfactorily demonstrated that the CSA even purportedly bars Ms. Troiani from complying with the subpoena.

In support of Defendant Cosby's assertion as to the legal meaning of the CSA, he

(through his attorney, Patrick J. O'Connor, Esquire) selectively quotes from the CSA. Yet as explained *supra* in Section I, even according to the text of the CSA selectively quoted by Defendant Cosby, **the CSA does not bar disclosure of documents, as provided in Paragraphs 15 and 21.** However, Defendant Cosby has chosen not to disclose the contents of Paragraphs 15 and 21 to Plaintiffs or this Court. Accordingly, there is no way to know whether, under the circumstances, the CSA even purportedly bars the production of the documents requested by the subpoena.

For that matter, it is impossible to verify that the CSA has the legal effect claimed by Defendant, without reviewing the **entire** CSA. There may be other, unmentioned portions of the CSA that materially modify the apparent terms of the CSA that Defendant has disclosed.

Defendant's selective disclosure of the CSA conspicuously does not substantiate his claim that the CSA, even by its own terms, bars Ms. Troiani from complying with the subpoena. On that basis alone, the Court should deny Defendant's Motion to Quash.

> **B. Regardless of the full content of the CSA. a private agreement between parties unrelated to the Plaintiffs, cannot bar the Plaintiffs from discovering important evidence.**

Assuming *arguendo* that the CSA by its terms prohibits the disclosure of Ms. Troiani's case file, the Court still should not preclude Plaintiffs from accessing what is likely the most valuable trove of relevant evidence in existence (other than Defendant Cosby's own case file for the *Constand* action), on account of an agreement that Defendant reached with third parties unrelated to Plaintiffs.

Defendant Cosby's position is that, by reaching a private agreement with a third party (here, Ms. Troiani), Defendant has purchased an impenetrable barrier between the Plaintiffs and a

substantial trove of relevant evidence. This is contrary to the overwhelming weight of federal case law regarding the proper bounds of discovery (at least as to the materials in Ms. Troiani's case file other than the CSA itself, which is addressed further *infra*).

A provision in a settlement agreement that purports to bar disclosure of documents in response to a third party's subpoena, is "ineffectual." *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009).

> Contracts bind only the parties. No one can "agree" with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off. . . . [A] person's desire for confidentiality is not honored in litigation. Trade secrets, privileges, and statutes or rules requiring confidentiality must be respected, see Fed. R. Civ. P. 45(c)(3)(A)(iii), but litigants' preference for secrecy does not create a legal bar to disclosure.

*Id.*

As this Court has noted, a party in one action should be able to discover materials generated in a previous, similar action, even if they are covered by a confidential settlement agreement, to eliminate the need for duplicative discovery. *See Koprowski v. Wistar Institute of Anatomy and Biology*, Case No. 92-CV-1132, 1993 U.S. Dist. LEXIS 13134, *7-8 (E.D. Penn. Aug. 20, 1993); *see also Kalinauskas v. Wong*, 151 F.R.D. 363, 366 (D. Nev. 1993). Indeed, forcing Plaintiffs to conduct additional, lengthy discovery in lieu of simply obtaining Ms. Troiani's case file, would contravene the FRCP 1 and 26 principles that discovery should be relatively inexpensive, and proportional to the needs of the case.

In *Kalinauskas*, the court held that the plaintiff in a sex discrimination case could depose a former plaintiff in a sex discrimination case against the same defendant, notwithstanding a confidential settlement agreement. The Court noted that "preventing the deposition of [the former plaintiff] would condone the practice of buying the silence of a witness with a settlement agreement." *Id.* at 365 (internal quotations omitted).

In accordance with the above, federal courts (including this one) have repeatedly held that where two parties reach a settlement agreement that terminates a claim and purportedly imposes a confidentiality requirement upon certain materials, this **does not bar** discovery by an unrelated third party involved in new litigation against one of the settling parties.  In addition to *Gotham Holdings*, *Koprowski*, and *Kalisnauskas*, see also *First Sealord Surety v. Durkin & Devries Insurance Agency*, 918 F. Supp. 2d 362, 382-83 & n.12 (E.D. Pa. 2013); *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225 (D. Mass. 2003); and *Gutter v. E.I. DuPont de Nemours and Co.*, Case No. 96-2152-CIV-GOLD, 2001 U.S. Dist. LEXIS 9706 (S.D. Fla. 2001).

In support of his Motion to Quash, Defendant Cosby cites from this jurisdiction *Allison v. Goodyear Tire & Rubber Co.*, MDL 875 EDPA Civil No. 07-69104, 2010 U.S. Dist. LEXIS 85917 (E.D. Penn. Aug. 19, 2010) and *Barbine v. Keystone Quality Transport*, Civil Action No. 03-3426, 2004 U.S. Dist. LEXIS 31839 (E.D. Penn. Apr. 16, 2004).  Yet in each of these cases, the Court only forbade the discovering party from obtaining a copy of the confidential settlement agreement itself, and not other documents generated by the prior litigation.  (To the contrary, *Barbine* expressly upheld a subpoena's request for such other documents.)  The same is true of *Hasbrouck v. BankAmerica Housing Services*, 187 F.R.D. 453 (N.D.N.Y. 1999), also cited by Defendant Cosby.  Each of these courts reasoned that the discovering party had not shown a substantial need for the contents of the confidential settlement agreement.  However, as noted *supra*, in this case Plaintiffs are amenable to narrowing the subpoena to exclude the CSA (unless the Court is otherwise inclined to grant Defendant Cosby relief on the basis of the supposed content of the CSA, *see infra* at Section IV.C).

Defendant Cosby cites only one case that forbade a party from discovering documents other than a confidential settlement agreement itself: *Flynn v. Portland General Electric Corp.*, Civil No.

14

88-455-FR, 1989 U.S. Dist. LEXIS 11219 (D. Ore. Sept. 21, 1989).  In addition to its being from a different jurisdiction, *Flynn* is distinguishable from this case.  There, the court ruled that nothing in a previous age discrimination case resolved by confidential settlement agreement, was **relevant** to the age discrimination case there at issue (except that the court ruled that the discovering party was entitled to the names of the deponents in the previous case).  Thus, *Flynn* was primarily a decision regarding the relevancy of the discovery at issue.  Plaintiffs have explained *supra* why Ms. Troiani's case file is relevant to this action.  *See also Atchison Casting*, 216 F.R.D. at 227-28 (distinguishing *Flynn* and ordering disclosure of confidential settlement agreement on the ground that its terms were relevant to the current action).

In sum, Defendant Cosby has not substantiated that the CSA even purportedly bars Ms. Troiani from producing her case file, which constitutes a trove of materials relevant to this action.  Furthermore, even if the CSA did purport to limit Plaintiffs' discovery in this manner, according to federal case law the subpoena still governs.  Defendant Cosby cannot frustrate Plaintiffs' discovery by appealing to an agreement that he made with an unrelated party.

### C. The Court should not limit the subpoena to any extent, without first ordering the production of the CSA.

If the Court were to consider limiting the subpoena to any extent on account of the CSA, then the Court should preliminarily rule that Ms. Troiani or Defendant Cosby must produce the CSA.  For Plaintiffs to test Defendant Cosby's claim of confidentiality, and for the Court to make an informed decision on the issue, they must be able to review the full CSA.  This is an easy decision for the Court to make, given that the text of the CSA that Defendant Cosby has chosen to disclose, expressly states that the CSA itself may be disclosed in response to a valid subpoena.  *See Gotham Holdings*, 580 F.3d at 665 (applying similar clause in confidential settlement agreement).

### V. Defendant Cosby is not entitled to delay enforcement of the subpoena on the

### **ground that he might obtain a confidentiality order some time in the future, specifically applicable to Ms. Troiani's case file.**

Defendant Cosby briefly contends on Page 15 of his Brief that the Court should not allow Ms. Troiani to disclose her case file until "the execution of a confidentiality agreement between Mr. Cosby and the Massachusetts plaintiffs, and on the issuance of a protective order in the Massachusetts action." Defendant Cosby gives no explanation for why Plaintiffs should have to enter into any "voluntary" confidentiality agreement with Defendant Cosby at all.

As for a protective order, the proper procedure is for Defendant Cosby to ask **this** Court to enter a protective order with respect to Ms. Troiani's case file. *See* FRCP 45(d)(3). Yet Defendant Cosby has not made such a request of this Court; nor has he defined the content of any proposed protective order specifically applicable to Ms. Troiani's case file. Therefore, Defendant Cosby has failed to demonstrate "good cause" for any protective order. *See McGuire v. Ryland Group, Inc.,* Case No. 6:05-cv-1421, 2006 U.S. Dist. LEXIS 86647 (M.D. Fla. Nov. 9, 2006) (rejecting jointly requested protective order, for vagueness); *MRS Invs. v. Meridian Sports, Inc.*, Cause No. IP 99-1954, 2002 U.S. Dist. LEXIS 1933 (S.D. Ind. Feb. 6, 2002) (same).

Moreover, it is speculative whether a protective order will ever be entered in the *Green* action that specifically governs the content of Ms. Troiani's case file. Indeed, the Court in the *Green* action has already rejected the proposed confidentiality order that Defendant Cosby has attached to his Motion to Quash as part of Exhibit 4. *See Exhibit A*, Transcript of Scheduling Conference on November 30, 2015 at 5-8.[5]

In any event, the alleged sexual assaults committed by Defendant Cosby, a well-known

---

[5] Since the scheduling conference, Defendant Cosby has proposed a new protective order that is under consideration in the *Green* action, *see* Dkt. Nos. 123 and 124. However, even if that protective order were to be adopted, it would merely keep materials produced in discovery under seal for two weeks, so that Defendant Cosby could **then** ask for a permanent seal of particular discovery materials. Defendant Cosby has not actually submitted a request in the *Green* action for any protective order specifically applicable to Ms. Troiani's case file.

personality and public moralist, are of public interest. Accordingly, as this Court has ruled, litigation materials regarding his alleged sexual assaults should not be sealed from the public. *See Constand* action, Dkt. No. 105, 2015 U.S. Dist. LEXIS 87332, *15-16 n.8 (E.D. Penn. July 6, 2015); *see also Pansy v. Borough of Stroudsburg*,23 F.3d 772, 786-87 (3d Cir. 1994) (a confidentiality order is not to be granted as a matter of course, but must be specifically justified as to each and every document it would cover). The CSA, executed by Defendant Cosby and other private parties, should not overrule the public interest in open judicial proceedings.

This is particularly so because events have overtaken the CSA: Since that agreement was executed, all filings in the *Constand* action have become public, Defendant Cosby's deposition transcript has become public, and scores of Defendant Cosby's accusers (including the formerly anonymous Rule 415 witnesses in the *Constand* action) have made their allegations public. (As noted, to date, there are approximately 55 total accusers, including Plaintiffs.) In terms of privacy, Defendant Cosby now has relatively little to gain by the imposition of a confidentiality order upon Ms. Troiani's case file.

On the other hand, Defendant Cosby certainly stands to gain by impeding Plaintiffs' discovery. Plaintiffs have been attempting to access Ms. Troiani's case file since April of 2015, but have been delayed thus far by Defendant Cosby's resistance. Plaintiffs should not be delayed further. Furthermore, Plaintiffs should not be limited in their disclosure of the contents of Ms. Troiani's case file, as it will likely prove crucial to share the contents with potential witnesses, *e.g.*, women (including the Rule 415 witnesses) other than the Plaintiffs who have accused Defendant Cosby of sexual assault.

**VI.    Defendant Cosby is not entitled to the special privilege of reviewing Ms. Troiani's case file before she complies with the subpoena.**

Defendant Cosby presents no authority and no convincing argument in favor of a special

privilege to review Ms. Troiani's case file before she produces it. Defendant Cosby likely already knows the contents of a substantial portion of Ms. Troiani's case file – far better than Plaintiffs do – because Defendant Cosby was a party to the *Constand* action.

Furthermore, as a general matter, when one party to litigation serves a subpoena for documents upon a third party, none of the parties to the litigation knows exactly what responsive documents the third party has. This is no reason to allow the party resisting discovery a special privilege to review the documents ahead of time.

Finally, Plaintiffs have already explained *supra* why the subpoena should be enforced, subject to no protective order. In any event, if the Court were inclined to allow Defendant Cosby to review Ms. Troiani's case file before it is made public, the Court should still order Ms. Troiani to provide the case file to Plaintiffs. Plaintiffs should be allowed to review the documents to the same extent as Defendant Cosby. It would be perverse to grant only Defendant Cosby the right to review the case file and to unilaterally decide what should be disclosed.

WHEREFORE, Plaintiffs respectfully request that the Court deny William H. Cosby, Jr.'s Motion to Quash a Subpoena.

                                                                    Respectfully submitted,

                                                            */s/ Joseph Cammarata*_____
                                                            **CHAIKIN, SHERMAN, CAMMARATA &**
                                                               **SIEGEL, P.C.**
                                                           The Law Building
                                                           1232 Seventeenth Street, N.W.
                                                           Washington, D.C. 20036
                                                           Ofc: (202) 659-8600
                                                           Fax: (202) 659-8680
                                                           E-mail: Joe@dc-law.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of December, 2015, a copy of Plaintiffs' Opposition to William H. Cosby, Jr.'s Motion to Quash a Subpoena, was served by Case Management / Electronic Case Files upon:

Patrick J. O'Connor
George M. Gowen, III
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Dolores M. Troiani
TROIANI & GIBNEY LLP
1171 Lancaster Avenue
Suite 101
Berwyn, PA 19312

Bebe H. Kivitz
JACOBS KIVITZ & DRAKE LLC
1525 Locust Street, 12th Fl.
Philadelphia, PA 19102

Robert L. Sachs, Jr.
SHRAGER, SPIVEY & SACHS
2005 Market Street
Suite 2300
Philadelphia, PA 19103

*/s/ Joseph Cammarata*
Joseph Cammarata, Esquire